**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NAGA SANDHYA MAHANANDIGARI & MADHU SUDAN REDDY MAHANANDIGARI, <br><br> Plaintiffs, <br><br> v. <br><br> TATA CONSULTANCY SERVICES, *et al*, <br><br> Defendants. | Civil Action No. 16-8746 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Tata Consultancy Services's ("TCS") motion to dismiss and compel arbitration of Plaintiff Naga Sandhya Mahanandigari's ("Mrs. Mahanandigari") claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* (ECF No. 19). Plaintiffs Mrs. Mahanandigari and her husband, Mr. Madhu Sudan Reddy Mahanandigari ("Mr. Mahanandigari") (collectively, "Plaintiffs") have opposed this motion (ECF No. 20), and TCS has replied to same (ECF No. 23). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court grants TSC's motion to dismiss Mrs. Mahanandigari's claims and to compel arbitration of same.

I. **Background**[1]

---

[1] The facts as stated herein are taken as alleged in Plaintiffs' Complaint. (ECF No. 1-1, Complaint, "Compl."). For purposes of this motion to dismiss, these allegations are accepted by the Court as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("The District Court, in deciding a motion [to dismiss under Rule] 12(b)(6), was required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff].").

1

Mrs. and Mr. Mahanandigari are a married couple currently residing in Dallas, Texas. (Compl. ¶ 1). Defendant "TSC is a multinational information technology service, consulting and business solutions company headquartered in Mumbai, India" (ECF No. 19, "Def.'s Mov. Br. at 3") with a principal place of business in Edison, New Jersey. (Compl. ¶ 1). Plaintiffs are both former employees of TSC.

Mrs. Mahanandigari began her employment with TSC in August 2015 as a software engineer. (Id. ¶ 6). Plaintiffs allege that as a condition of her employment, Mrs. Mahanandigari relocated from Dallas, Texas—where she currently resides—to Cincinnati, Ohio. (Id. ¶ 7). According to Plaintiffs, shortly after Mrs. Mahanandigari relocated to Ohio, TSC "lost an account due to competition." (Id. ¶ 8). Plaintiffs allege that Mr. Praveen Chekuri and Mr. Ganapathi Raman, both employees of TSC, "directed Mrs. Mahanandigari to meet with the former client's Caucasian representative to get the account back." (Id. ¶ 9). Plaintiffs further allege that Mr. Chekuri told Mrs. Mahanandigari to "do anything it takes" to get the account back. (Id. ¶ 10).

Plaintiffs allege that on account of Mrs. Mahanandigari's inability to win back TSC's prior client, Mrs. Mahanandigari was subjected to demeaning comments from other employees of TSC. Specifically, Plaintiffs allege that

> Mr. Chekuri advised [Mrs. Mahanandigari]: (a) that Mrs. Mahanandigari was not "beautiful enough," (b) that she should have at least "worn a good looking dress," (c) that a man and/or a Caucasian woman would have succeeded in persuading the former client's representative, and (d) that [TSC] must hire attractive local women.

(Id. ¶ 11). Plaintiffs allege that Mrs. Mahanandigari was subjected to additional derogatory comments from other employees. (Id. ¶¶ 12-15). For example, Plaintiff alleges that several employees advised Plaintiff that "if she needed a job, the way it works is totally different" and that TSC "is a tough place for Indian women." (Id. ¶¶ 12-15). According to the Complaint, Mrs. Mahanandigari was not given any more work, was instructed to locate back to Dallas, Texas for

2

purported "project relocation reasons, with the promise that relocation expenses would be reimbursed." (Id. ¶ 16). However, Plaintiffs allege that TSC did not give Mrs. Mahanandigari any more work after relocating her to Dallas, did not reimburse her as promised, and summarily terminated her employment. (Id. ¶¶ 17-20).

After TSC terminated Mrs. Mahanandigari, the Company allegedly targeted her husband to the point that he was forced to resign. (Id. ¶ 21). Specifically, Plaintiffs allege that the Company forced Mr. Mahanandigari "to work more than eight (8) hours at a time, manning calls with India overnight without pay, and also [forced] him to work after business hours and holidays." (Id. ¶ 23). Plaintiffs further allege that Mr. Chekuri routinely spoke, using derogatory language along the same lines as that noted above, about Mrs. Mahanandigari's failure to recover the lost client in Mr. Mahanandigari's presence. Plaintiffs allege that "Mr. Mahanandigari was constructively discharged as a direct result of his wife's failure to use her femininity and sexuality to persuade a client to return to [TSC]." (Id. ¶ 27).

Against this backdrop, Plaintiffs filed the instant action in the Superior Court of New Jersey, Law Division, Middlesex County, on October 18, 2016. (Compl. at 1). The Complaint asserts nine counts for causes of action for violations of the New Jersey Law Against Discrimination ("NJ LAD") (Counts One through Four, Count Nine), breach of contract (Count Five), breach of the covenant of good faith and fair dealing (Count Six), loss of consortium (Count Seven), and aiding and abetting violations of the NJ LAD (Count Eight). Defendant removed this action to Federal Court on November 23, 2016. (ECF No. 1). This matter is properly before the Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (ECF No. 1 at 2).

3

After removing this action to Federal Court, Defendant filed the pending motion to dismiss and compel arbitration of Mrs. Mahanandigari's claims.[2] In short, Defendant argues that Mrs. Mahanandigari should be compelled to arbitrate her claims pursuant to an Arbitration Agreement that she signed in connection with her employment with TSC. The Parties have fully briefed this matter, and the motion is ripe for this Court's adjudication.

## II. Legal Standard

Generally, an agreement to arbitrate a dispute "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters, Chauffeurs, Warehouseman & Helpers of America*, 812 F.2d 91, 94 (3d Cir. 1987) (quoting, in full, *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The Federal Arbitration Act (the "FAA" or the "Act"), applies to arbitration clauses contained in contracts involving matters of interstate commerce. *See* 9 U.S.C. § 2; *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When a party whose claims are subject to the Act refuses to arbitrate the same, the district court must decipher whether the claims are arbitrable. *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 653 (quotations omitted).

In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement. *See Century Indem. Co. v. Certain Underwriters*

---

[2] Defendant does not move to dismiss or compel arbitration with respect to Mr. Mahanandigari's claims. Defendant has filed an answer with respect to Mr. Mahanandigari's claims. (Def.'s Mov. Br. at 3 n. 2).

4

*at Lloyd's,* 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.,* 420 F.Supp.2d 349, 356 (D.N.J. 2006). In considering the first inquiry, court must "apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party." *Aliments Krispy Kernels, Inc. v. Nichols Farms,* 851 F.3d 283, 288 (3d Cir. 2017).

### III. Discussion

#### A. Whether there is a Valid Arbitration Agreement

As noted above, the Court must first determine whether there is a valid agreement to arbitrate between the parties. In resolving whether the parties agreed to arbitrate, this Court is guided by the New Jersey Supreme Court's decision in *Leodori v. CIGNA Corp.* 175 N.J. 293 (2003). In that case, the Court asked the following questions: (1) whether the relevant waiver-of-rights provision reflects an unambiguous intention to arbitrate a claim; and (2) if so, whether the record before the court indicates that plaintiff actually agreed to that provision. *Leodori,* 175 N.J. at 303.

In resolving the first question, this Court has reviewed the "Mutual Agreement to Arbitrate Claims" ("Arbitration Agreement") which Mrs. Mahanandigari signed prior to commencing her employment with TSC. (ECF No. 19-4, Declaration of Ashok Seetharaman, "Seetharaman Decl.," Exh. B). In relevant part, the Arbitration Agreement reads as follows:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against any of the following (1) the Company, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, (4) the Company's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them.

5

(Id. at 1).

The Arbitration Agreement then provides a list of claims that are deemed "arbitrable" under the Arbitration Agreement, including, but not limited to:

> claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, [etc.]) . . . and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded in the section of this Agreement entitled "Claims Not Covered By The Agreement."

(Id.). The Arbitration Agreement concludes with the following language, in the style in which it appears herein:

> **I UNDERSTAND THAT PROMISES BY THE COMPANY AND BY ME TO ARBITRATE DIFFERENCES, RATHER THAN LITIGATE THEM BEFORE COURTS OR OTHER BODIES, PROVIDE CONSIDERATION FOR EACH OTHER. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.**
>
> **I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.**

(Id. at 3).

In light of the above language, the Court finds that the Arbitration Agreement unambiguously sets forth the signatories' intent to arbitrate all employment-related claims, including those asserted in this action. The Court is not persuaded by Plaintiffs' arguments to the contrary.

According to Plaintiffs, the Arbitration Agreement is void as contrary to public policy. (Pls.' Br. at 5-8). Plaintiffs' public policy argument appears to be grounded in two theories. On the one hand, Plaintiffs argue that the Arbitration Agreement could not be the product of the signatories' mutual asset or "meeting of the minds," because Mrs. Mahanandigari would never have agreed "that arbitration would be the sole remedy in the event that [Mrs. Mahanandigari] was terminated for failing to prostitute herself." (Id. at 7). On the other hand, Plaintiffs contend that "the [A]rbitration [A]greement would be void for the purpose of illegality since prostitution is obviously illegal." (Id.). The Court is not moved by these arguments.

The discrete issue raised by Defendant's motion is not whether Mrs. Mahanandigari ever agreed to "prostitute herself" or whether Mrs. Mahanandigari agreed that, in the event she were asked to do so, her only remedy would be to arbitrate her claims. Rather, the question raised by the pending motion is whether the Mrs. Mahanandigari entered into a valid Arbitration Agreement. Therefore, Plaintiffs' public policy arguments miss the mark. As discussed above, Mrs. Mahanandigari expressly agreed to arbitrate her employment-related claims. Contrary to Plaintiffs' suggestion, there is no exception to arbitration for particularly "conscience-shocking" allegations. (Pls.' Br. at 5).

Nor is the Court moved by Plaintiffs' argument that the Arbitration Agreement is too vague and internally contradictory to be enforceable. (Pls.' Br. at 8-9). Plaintiffs argue that the Arbitration Agreement is internally contradictory because it contains language which permits "the filing of . . . [a] charge filed with or communication to [a] federal, state or local government office, official or agency." (Id.; Arbitration Agreement). As Defendant notes, however, the very sentence that contains this purportedly problematic language begins with an acknowledgment that "[t]he Company and [Mrs. Mahanandigari] agree that neither of us shall initiate any lawsuit or

administrative action in any way related to any claims covered by this Agreement." Read in its entirety, the Arbitration Agreement is unambiguous in its terms.

In summary, the Court finds that the Arbitration Agreement is valid and enforceable. Plaintiffs have failed to convince the Court otherwise.

### B. Whether the Dispute Falls within the Scope of the Arbitration Agreement

Having determined that the Arbitration Agreement is valid, the Court next considers whether Mrs. Mahanandigari's claims fall within the scope of that Agreement.

Mrs. Mahanandigari asserts claims of: employment discrimination (Counts One through Four and Nine); breach of contract (Count Five); breach of the covenant of good faith and fair dealing (Count Six); loss of consortium (Count Seven); and emotional distress (Count Eight). Each of these claims fall squarely within the scope of the Arbitration Agreement.

In particular, in signing the Arbitration Agreement, Mrs. Mahanandigari expressly agreed to resolve "all claims or controversies . . . arising out of [her] employment." Each of Mrs. Mahanandigari's claims certainly arise out of her employment with Defendant. Moreover, the Arbitration Agreement, by its express terms, covers tort claims generally, which would incorporate the majority of Mrs. Mahanandigari's claims. Finally, the Arbitration Agreement lists a non-exhaustive list of claims which shall be subject to arbitration, which list includes claims for employment discrimination, breach of express and implied contract specifically. Aside from the arguments rejected above, Plaintiffs have not argued that Mrs. Mahanandigari's claims do not fall within the scope of the Arbitration Agreement.

Instead, Plaintiffs argue that compelling Mrs. Mahanandigari to arbitrate her claims would prejudice Mr. Mahanandigari's claims. Specifically, Plaintiffs argue that Mr. Mahanandigari is an "indispensable party to Plaintiff's [sic] suit because he is [Mrs. Mahanandigari's] husband, and he

8

too was fired after Plaintiff failed to prostitute herself." (Pls.' Br. at 3). Thus, according to Plaintiffs, if Mrs. Mahanandigari is required to arbitrate her claims, the arbitration could have an unfair preclusive effect on Mr. Mahanandigari's claims. (Id.). The Court rejects this argument.

Plaintiffs' "indispensable party" argument misses the mark. The "indispensable party" doctrine is traditionally applied in considering whether an individual should or must be joined as a party to a lawsuit. *See, e.g., Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1053 (3d Cir. 1988); Fed. R. Civ. P. 19. Even if the Court were to credit Plaintiffs' argument that Mr. Mahanandigari is an "indispensable party" to the instant suit, such status would be inapposite to the Court's analysis with respect to the two-part inquiry outlined above. A ruling that credits Plaintiffs' "indispensable party" argument would permit an employee bound by an Arbitration Agreement to sidestep a contractual duty to arbitrate claims simply by filing a lawsuit with an "indispensable party." Such a ruling would fly in the face of the Federal and New Jersey policies favoring arbitration. *See Moses H. Con Mem'l Hops. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (recognizing the "liberal federal policy favoring arbitration agreements"); *Marchak v. Claridge Commons, Inc.*, 134 N.J. 275, 282 (1993) ("An agreement to arbitrate should be read liberally in favor of arbitration.").

Moreover, to the extent that Plaintiff is arguing that the outcome of arbitration would have a preclusive effect on Mr. Mahanandigari's claims, Plaintiff is wrong as a matter of law. "Application of the claim preclusive aspect of the *res judicata* doctrine requires a showing that there has been: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984).

Assuming, *arguendo* that an arbitrator were to find in Defendant's favor, that finding would not constitute a final judgment on the merits as to Mr. Mahanandigari's claims, as Mr. Mahanandigari would not be a party to that arbitration. Nor, for that matter, have Plaintiffs persuasively argued that Mr. Mahanandigari would be a privy of Mrs. Mahanandigari for the purposes of claim preclusion. Rather, Plaintiffs summarily state that Mr. Mahanandigari "is in privity with Plaintiff." (Pls.' Br. at 4). Therefore, contrary to Plaintiffs' argument, Mr. Mahanandigari would not be barred from asserting his independent claims if the arbitrator were to find in favor of Defendant.[3]

**IV. Conclusion**

For the reasons discussed herein, Defendant's motion to dismiss Mrs. Mahanandigari's claims and to compel arbitration of same is granted. Additionally, Mr. Mahanandigari's claim for loss of consortium is dismissed as indicated, *supra*, n. 3. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: June 19, 2017

JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT

---

[3] The Court notes, however, that in Count Seven of the Complaint, Mr. Mahanandigari asserts a claim for loss of marital services, which this Court construes as a claim for loss of consortium. (Compl. at 11). Loss of consortium claims are derivative claims that are contingent upon the spouse's related substantive claim. *Acevedo v. Monsignor Donovan High School*, 420 F.Supp. 2d 337, 347. ("A loss of consortium claim is a derivative claim, 'depend[ing] upon the existence of tortious conduct on the part of the defendants.'") (quoting *Horvath v. Rimtec Corp.*, 102 F. Supp. 219, 236 (D.N.J. 2000)); *see also Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 438 (3d Cir. 1986) (holding that in a breach of employment contract case, a wife's right to recover for loss of consortium was derivative to that of her formerly employed husband). Accordingly, the Court will dismiss Mr. Mahanandigari's loss of consortium claim at this time as it is purely derivative of his wife's yet unresolved claims. *See Perez v. New Jersey Transit Corp.*, 341 Fed. Appx. 757, 764 (3d Cir. 2009) (affirming the district court's "conclus[ion] that because Perez's tort claims were subject to dismissal, his wife's derivative loss of consortium claim was also subject to dismissal").